## LESTER KATZ *v.* COMMISSIONER OF REVENUE SERVICES
### (15172)

PETERS, C. J., and BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued May 25—decision released August 1, 1995

*Lester Katz*, pro se, the appellant (plaintiff).

*Robert L. Klein*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

BORDEN, J. The principal issue in this appeal is whether certain money market fund distributions, designated as tax-exempt interest dividends, which are exempt from federal taxation, also are exempt from state taxation. The plaintiff, Lester Katz, brought an appeal in the trial court, claiming that the defendant, the commissioner of revenue services, had improperly denied the plaintiff's request for a tax refund because: (1) the defendant had failed to act on his refund request within the required ninety day time period; and (2) the defendant had improperly concluded that the distributions received by the plaintiff were taxable under state law. The plaintiff appeals[1] from the judgment of the trial court dismissing his appeal. Because we conclude that the ninety day time period is directory, not mandatory, and that the distributions are not exempt from state taxation, we affirm the judgment of the trial court.

The following facts and procedural history are undisputed. In 1987, the plaintiff invested in the Merrill Lynch CMA Tax-Exempt Fund (fund). The fund invests in obligations of state and municipal governments that are exempt from federal income taxes. In the same year, he received payment from the fund in

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

the amount of $24,736. The distributions were designated by the fund as tax-exempt interest dividends.

On the plaintiff's 1987 federal tax form, he reported this amount as "tax exempt interest income." The plaintiff did not, however, include the distributions as taxable dividend and interest income on his Connecticut tax return. On March 5, 1991, the defendant sent a tax computation notice to the plaintiff, assessing him $2968.24 in additional tax, plus interest of $1298.61. The plaintiff paid the additional tax and interest under protest, and filed a refund claim, pursuant to General Statutes § 12-515,[2] which was received by the defendant on April 1, 1991. On December 19, 1991, the defendant notified the plaintiff that the distributions received by the plaintiff were subject to state taxation. Accordingly, the defendant denied the plaintiff's petition for a refund.

The plaintiff appealed to the trial court, claiming that: (1) the defendant's decision denying the request for a refund was invalid because he had failed to act within the ninety day period required by § 12-515; and (2) the distributions were exempt from state taxation. The trial

[2] General Statutes § 12-515 provides: "REFUND CLAIMS. Any taxpayer who feels that he has overpaid any taxes due under this chapter may file a claim for refund in writing with the commissioner within three years from the due date for which such overpayment was made stating the specific grounds upon which the claim is founded. Not later than ninety days following receipt of such claim for refund the commissioner shall determine whether such claim is valid and if so, said commissioner shall notify the comptroller of the amount of such refund and the comptroller shall draw an order on the treasurer in the amount thereof for payment to the taxpayer. To the amount of such refund there shall be added interest at the rate of three-fourths of one per cent for each month or fraction thereof which elapses between the ninetieth day following receipt of such claim for refund by the commissioner and the date of notice by the commissioner that such refund is due. Failure to file a claim within the time prescribed in this section constitutes a waiver of any demand against the state on account of overpayment. Within thirty days after disallowing any claim in whole or in part the commissioner shall serve notice of his action on the claimant."

court concluded that the ninety day period was mandatory, but determined that enforcement of the time provision rested with the plaintiff, by way of a mandamus action. The court then concluded that the distributions received by the plaintiff were subject to state taxation, and rendered judgment in favor of the defendant. This appeal followed.

We first address the plaintiff's claim that § 12-515 contains a mandatory provision requiring the defendant to act on a claim for a refund within ninety days. The plaintiff contends that, because the defendant failed to meet the ninety day requirement, the defendant's denial of the plaintiff's request for a refund was invalid. We disagree. We conclude that the ninety day period in § 12-515 is directory.

"The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply." (Citations omitted; internal quotation marks omitted.) *Jones* v. *Mansfield Training School,* 220 Conn. 721, 727, 601 A.2d 507 (1992). A reliable guide in determining whether a statutory provision is directory or mandatory is whether the provision is accompanied by language that expressly invalidates any action taken after noncompliance with the provision. *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals,* 225 Conn. 432, 440, 623 A.2d 1007 (1993).

The purpose of § 12-515 is to provide a mechanism for taxpayers who have overpaid taxes to obtain a refund. The defendant has ninety days to act on a claim for a refund without having to pay interest on the refund; after ninety days, interest accrues. The ninety day requirement, therefore, is not related to a matter of substance, but serves as an inducement to the defendant to process refund claims in a timely manner, and as a remedy for a taxpayer whose rightful refund is delayed beyond ninety days.

Section 12-515 contains no language indicating that the defendant's decision regarding a refund will be void if more than ninety days elapse between receipt of the claim for a refund and notice of the commissioner's decision. To the contrary, by providing that "there shall be added interest . . . between the ninetieth day following receipt of such claim for refund by the commissioner and the date of notice by the commissioner that such refund is due," the statute expressly contemplates that some decisions will be made by the defendant beyond the ninety day time period.

The legislative history of § 12-515 supports our conclusion that the ninety day period is directory rather than mandatory. Prior to 1985, § 12-515 lacked the ninety day requirement and did not provide for interest to be paid on tax refunds.[3] Number 85-356 of the 1985 Public Acts added the ninety day requirement, in conjunction with a provision that interest be paid on any refund not paid within the ninety day period. The debate in the House of Representatives strongly

[3] General Statutes (Rev. to 1983) § 12-515 provides: "REFUND CLAIMS. Any taxpayer who feels that he has overpaid any taxes due under this chapter may file a claim for refund in writing with the commissioner within three years from the due date for which such overpayment was made stating the specific grounds upon which the claim is founded. Failure to file a claim within the time prescribed in this section constitutes a waiver of any demand against the state on account of overpayment. Within thirty days after disallowing any claim in whole or in part the commissioner shall serve notice of his action on the claimant."

suggests that the ninety day requirement was included solely to delineate the point at which interest would begin to accrue and was wholly unrelated to determining whether the defendant's actions outside the ninety day period were substantively valid. A proponent of the provision stated that "[t]his particular amendment is going to put two new sections into the bill, and basically the sections end up, requiring the payment of interest on refunds of both the succession tax, the capital gains, dividends and interest tax, when the Commissioner does not make the refund within 90 days of the claim." 28 H.R. Proc., Pt. 17, 1985 Sess., pp. 6168–69, remarks of Representative Linda N. Emmons.

Furthermore, construing the ninety day period as mandatory would mean that some taxpayers who had claimed refunds to which they were not legally entitled would nonetheless receive them solely because of an administrative delay. Absent a clear legislative indication, we are loathe to attribute an intent to the legislature to draw down the public fisc in favor of those with no substantive entitlement thereto. The statute provides that the remedy for undue delay is interest on what is due the taxpayer, not payment of what is not due the taxpayer.

The plaintiff next claims that because the dividends that he received from the fund were not taxable for federal income tax purposes, they were similarly not taxable for Connecticut tax purposes. We disagree.

The parties stipulated that the distributions received by the plaintiff were designated as "tax-exempt interest dividends" and that the distributions were exempt from federal taxation. General Statutes (Rev. to 1987) § 12-506 (a) (1)[4] imposes a tax on "all dividends and

---

[4] General Statutes (Rev. to 1987) § 12-506 provides in relevant part: "IMPOSITION OF TAX ON DIVIDENDS, INTEREST INCOME AND CAPITAL GAINS. (a) A tax is hereby imposed on (1) all dividends and interest income earned, received in fact or constructively, accrued or credited to the taxpayer dur-

interest income earned." "Dividends" is defined in General Statutes (Rev. to 1987) § 12-505 as "those dividends taxable for federal income tax purposes without regard to the dividend exclusion." The plaintiff argues that because the dividends he received are not taxable for federal income tax purposes, they are not within the definition of dividends in § 12-505. By falling outside the § 12-505 definition, the plaintiff insists, the dividends cannot be taxed under § 12-506. We are not persuaded.

Although the tax-exempt interest dividends do not qualify as "dividends" under § 12-505, they do qualify as taxable "interest income" under that statute.[5] Section 12-518-9a (d) (3) of the Regulations of Connecticut State Agencies[6] provides that interest income means any "exempt-interest dividends," as defined in the Internal Revenue Code (I.R.C.) § 852 (b) (5). Sec-

ing his taxable year except that no such tax shall be imposed unless the taxpayer's adjusted gross income in such year equals or exceeds fifty-four thousand dollars, in accordance with [the tax schedule] . . . ."

[5] General Statutes (Rev. to 1987) § 12-505 provides in relevant part: "DEFINITIONS. . . . '[I]nterest income' means (1) any interest income taxable for federal income tax purposes, exclusive of any such income with respect to which taxation by any state is prohibited by federal law, less any amounts forfeited to a bank, savings bank, savings and loan association, credit union or other depository institution, wherever located, as a penalty for premature withdrawal of funds from a time savings account, certificate of deposit, or similar class of deposit, and (2) any interest income from obligations issued by or on behalf of any state, political subdivision thereof, or public instrumentality, state or local authority, district, or similar public entity, exclusive of such income from obligations issued by or on behalf of the state of Connecticut, any political subdivision thereof, or public instrumentality, state or local authority, district, or similar public entity created under the laws of the state of Connecticut . . . ."

[6] Section 12-518-9a (d) of the Regulations of Connecticut State Agencies provides: " 'Interest income' means—(1) any interest income which, for federal income tax purposes, is subject to tax, (2) any interest income which is derived from obligations issued by or on behalf of any State, any political subdivision thereof, or any agency, instrumentality, authority or district of any State or any political subdivision thereof, and (3) any exempt-interest dividends, as defined in section 852 (b) (5) of the Internal Revenue Code."

tion 852 (b) (5) (A) defines tax-exempt interest dividends as "any dividend or part thereof (other than a capital gain dividend) paid by a regulated investment company and designated by it as an exempt-interest dividend in a written notice mailed to its shareholders . . . ." The tax-exempt interest dividends received by the plaintiff manifestly fall within the ambit of § 852 (b) (5) (A), and thus within § 12-518-9a (d) (3). As an item of interest income, therefore, the distributions are subject to state taxation under § 12-506.

The plaintiff argues, however, that the defendant, in promulgating § 12-518-9a (d) (3) of the regulations, exceeded his powers, thus rendering that subdivision invalid. The plaintiff notes that, unlike subdivisions (1) and (2) of § 12-518-9a (d), which mirror the language of § 12-506, subdivision (3) of the regulation is not directly drawn from the language of the statute. The plaintiff relies on *Fusco-Amatruda Co.* v. *Tax Commissioner*, 168 Conn. 597, 604, 362 A.2d 847 (1975), for the proposition that "[n]o administrative or regulatory body can modify, abridge or otherwise change the statutory provisions under which it acquires authority unless the statute specifically grants it that power. . . . In the context of the taxing power, this means that an administrative rule or regulation . . . is ineffective if, inter alia, it purports to enlarge an exemption or confer an exemption not conferred by the statute." (Citations omitted; internal quotation marks omitted.) According to the plaintiff, *Fusco-Amatruda Co.* not only applies to expanding upon an exemption, but also to expanding the scope of a tax. The plaintiff contends that when the defendant issued § 12-518-9a (d) (3), he expanded the definition of interest income,[7] and so in

[7] In his brief, the plaintiff states that the defendant expanded the definition of "dividends," but in his reply brief refers to the defendant's efforts to modify the General Assembly's definition of "interest income." Because § 12-518-9a (d) clearly addresses the definition of interest income, we assume that the plaintiff's argument is that the regulation expanded the definition of interest income.

effect imposed a tax not contemplated by the General Assembly. Accordingly, the plaintiff asserts, the regulation is invalid. We disagree.

The defendant has broad power, under General Statutes § 12-2,[8] to promulgate regulations designed to carry out the purpose of the tax statutes. "This court pays considerable deference to the commissioner's interpretation of tax statutes . . . [unless] the issue has not previously been the subject of judicial scrutiny, has not been the subject of a legislatively approved regulation and is not a time-tested interpretation of the statute . . . ." (Citations omitted.) *Ruskewich* v. *Commissioner of Revenue Services*, 213 Conn. 19, 24, 566 A.2d 658 (1989).

Although our case law has not specifically addressed § 12-518-9a, the state dividends, interest income and capital gains tax has received judicial scrutiny on a number of occasions. See, e.g., id., 19; *Yaeger* v. *Dubno*, 188 Conn. 206, 449 A.2d 144 (1982); *Woodruff* v. *Tax Commissioner*, 185 Conn. 186, 440 A.2d 854 (1981). In those cases we held that, because our statutory scheme is based on the federal statutory scheme, the federal treatment of dividends and capital gains applies to the dividends and capital gains income that is subject to taxation under § 12-506.[9] The regulation at issue here appropriately follows federal rules, because it, like I.R.C. § 852 (b) (5) (B), prescribes how tax-exempt inter-

---

[8] General Statutes § 12-2 provides in relevant part: "APPOINTMENT, POWERS AND DUTIES OF COMMISSIONER OF REVENUE SERVICES. ADMINISTRATIVE PRONOUNCEMENTS. (a) . . . . The commissioner may prescribe regulations . . . and make rulings, not inconsistent with law, to carry into effect the provisions of [title 12], which regulations or rulings, when reasonably designed to carry out the intents and purposes of [title 12], shall be prima facie evidence of its proper interpretation. . . ."

[9] The statutory scheme at issue in *Ruskewich* v. *Commissioner of Revenue Services*, supra, 213 Conn. 19, *Yaeger* v. *Dubno*, supra, 188 Conn. 206, and *Woodruff* v. *Tax Commissioner*, supra, 185 Conn. 186, did not subject interest to taxation. Interest was added as a taxable item in 1983.

est dividends, such as those received by the plaintiff, should be treated: "An exempt-interest dividend shall be treated by the shareholders for all purposes of this subtitle as an item of *interest* . . . ."[10] (Emphasis added.) The regulation, then, by following the federal characterization of the distributions as interest income, is consistent with our prior cases.

In addition, the regulation was approved by the legislative regulation review committee, as required by General Statutes § 4-170.[11] Legislative ratification of a proposed regulation by the review committee is an important consideration in determining whether a regulation is consistent with a statutory scheme. *Phelps Dodge Copper Products Co.* v. *Groppo*, 204 Conn. 122, 129–30, 527 A.2d 672 (1987). Moreover, the regulation was enacted in 1985 and remains in effect today. A regulation's existence "for a substantial period of time, although not itself determinative, is persuasive as to its validity." Id., 130.

Because § 12-518-9a (d) (3) is consistent with our prior cases interpreting §§ 12-505 and 12-506, and because the regulation received legislative approval and has been in effect for ten years, we conclude that the defendant's interpretation of "interest income," as set forth in the regulation, is entitled to great deference and was a valid exercise of his authority. Because the distributions received by the plaintiff fall within the

---

[10] Accordingly, the exempt-interest dividends are subject to the state tax pursuant to § 12-506, even though they are excludable from gross income for federal tax purposes pursuant to § 852 (b) (5) (B).

[11] General Statutes § 4-170 provides in relevant part: "LEGISLATIVE REVIEW COMMITTEE. . . . (a) There shall be a standing legislative committee to review all regulations of the several state departments and agencies following the proposal thereof . . . .

"(b) No adoption, amendment or repeal of any regulation . . . shall be effective until the original of the proposed regulation . . . has been approved by the committee . . . ."

scope of the regulation, they are an item of interest income subject to state taxation.

The judgment is affirmed.

In this opinion the other justices concurred.